IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DION EGGERSON,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 707 ) |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Dion Eggerson brought this action against the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") appealing the decision to deny him disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have filed cross motions for summary judgment. For the following reasons, plaintiff's and defendant's motions for summary judgment are denied. This case is remanded for further proceedings consistent with this opinion.

I.

On August 6, 2004, plaintiff applied for DIB and SSI alleging that he had been unable to work since March 2, 2002, due to HIV and HIV-related complications. The claim was denied initially on October 21, 2004, and upon reconsideration on February 15, 2005. Plaintiff filed a request for a hearing. On April 4, 2005, an Administrative Law Judge (the "ALJ") held a hearing, at which plaintiff, who was represented by counsel, Dr. Sheldon Slodki, a

medical expert ("ME"), and Sallie Moore, a vocational expert ("VE"), testified. The ALJ issued a decision on July 21, 2006 finding that plaintiff was not disabled under the Social Security Act (the "Act"). On May 3, 2007, upon plaintiff's request, the Appeals Council reviewed and vacated the ALJ's decision. The Appeals Council remanded the case to the ALJ, instructing the ALJ to revisit his finding that plaintiff's subjective complaints were not credible, and to further evaluate and provide a rationale pertaining to the evaluation of symptoms in accordance with the Act and SSR 96-7p, among other things.[1] Following a July 3, 2007 hearing on remand with testimony from a second ME, Dr. Larry Kravitz (a psychologist), a second VE, Lee Knutson, and additional testimony from the plaintiff, on August 13, 2007, the ALJ denied plaintiff's claims again. On November 30, 2007, plaintiff filed a request for review with the Appeals Council regarding the August 13, 2007 decision, which was denied. Plaintiff subsequently filed the instant action on January 30, 2008.

Plaintiff is HIV positive and has lymphedema of the left leg, which may be HIV-related. (R. 18, 479). He has had a number of HIV-related complications in the past, including candidiasis, herpes zoster, anemia, granulocytopenia, macular rash, and

---

[1] The Appeals Council also instructed the ALJ to include his assessment of plaintiff's ability to perform work related mental activities. On remand, the ALJ found no indication of psychological impairment and plaintiff does not contest this finding. (R. 20; *see* Pl.'s Mem. 1-2.)

2

sebaceous dermatitis, among other things, all of which either have resolved themselves or are being controlled by medication. (R. 271-295, 479.) Plaintiff ambulates with a cane. (R. 553.) He can stand about 10 minutes and walk about 15 feet without his cane. (R. 552-53.) He can lift ten pounds and carry five pounds. (R. 535-36.) Plaintiff's lymphedema causes swelling and pain in his left ankle. (R. 488.) The swelling increases and progresses up his leg when he stands, walks, or sits for periods of time. (R. 488.) To reduce swelling and pain, plaintiff takes medication, wears a compression stocking, sits or lies down while elevating his leg, and periodically uses a pneumatic compression pump.[2] (R. 501-503, 515, 540-41, 553.) Plaintiff testified that he uses a compression pump three or four hours per day, usually around 10:00AM, 3:00PM, and 8:00PM.[3] (R. 498, 540, 553.) He was prescribed gabapentin for the swelling of his left ankle and amitriptyline, which is sometimes prescribed for sleep, pain control or depression. (R.

---

[2] A lymphedema pump is an intermittent pneumatic compression device that consists of an inflatable garment that wraps around the arm or leg and an electrical pneumatic pump that fills the garment with compressed air. The garment is intermittently inflated and deflated with cycle times and pressures that vary between devices. This helps squeeze the lymph fluid through any lymph channels that are present. When the device deflates, blood is allowed to circulate through the area. After many repeated cycles, this device may reduce swelling from lymphedema.

[3] Plaintiff's attorney noted these specific times for the record and plaintiff testified they were accurate. (R. 540, 553.)

3

548-49.) Plaintiff also takes Tylenol III with codeine and naproxen for pain management, and various medications to control his HIV. (R. 553-55.) He testified that he always has some pain, and that his pain level fluctuates between about a 3 or 4 up to about an 8 on a scale of 1 to 10. (R. 504-05, 566-67.) Plaintiff currently lives with his mother. (R. 533.)

The ME, Dr. Slodki, called by the ALJ to testify at the first hearing, confirmed plaintiff's HIV status and the diagnosis of lymphedema of the left leg. (R. 476-77.) Lymphedema occurs when the lymphatic system does not drain properly. (R. 477). As a result, fluid accumulates, which causes swelling that is persistent and difficult to control. (R. 477). The lymphatic problem could be related to plaintiff's HIV. (R. 479). Dr. Slodki testified that plaintiff's impairments did not meet or equal a listed impairment, but that his residual functional capacity ("RFC") would be restricted due to limitations resulting from symptoms of the diagnosed lymphedema. (R. 476-78, 512-16.) He also acknowledged that the record documents plaintiff's complaints of fatigue, and his use of a cane, a compression pump, a compression stocking, and the medications described above. (R. 485-86, 515.)

The VE, Mr. Lee Knutson[4], testified that in the past plaintiff held positions as a printer's assistant (skilled, medium exertion),

---

[4] A different VE (Sallie Moore) testified in the first hearing (R. 517-528); however, the ALJ relied on Mr. Knutson's testimony in the August 2007 decision.

4

a machine operator (semi-skilled and heavy exertion), a cook (semi-skilled and medium exertion), and a driver (semi-skilled and medium exertion). (R. 569.) In a hypothetical posed to the VE, the ALJ inquired as to jobs available to a 40 year old with a twelfth grade education, who could: (1) sit all day unrestricted; (2) stand for ten minutes at a time, alternating standing and sitting; (3) walk 20 feet with a cane; and (4) perform occasional postural movements, such as stooping and kneeling. (R. 569.) The VE responded that such a person could not perform any of plaintiff's past work, but would be able to perform other work, such as an order clerk, cashier, or surveillance system monitor. (R. 569-72.) When asked by plaintiff's attorney if a person who had to keep one leg elevated while sitting or use a compression pump twice a day for an hour each time could perform the described jobs, the VE testified that someone with those limitations would not be able to do so. (R. 572, 574.)

In his decision, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment, and that plaintiff retained the RFC for sedentary work, allowing for a sit/stand option, with a break every thirty minutes to relieve left leg pain. (R. 19.) The ALJ further found that plaintiff could walk one to one and a half blocks without assistance, carry five to ten pounds, and lift ten pounds. *Id.* In support of this finding, the ALJ restated a portion of plaintiff's testimony and select portions of

5

the record. (R. 20-21.) The ALJ found that plaintiff's symptoms could reasonably be expected to produce the alleged symptoms, but that his statements were not entirely credible with respect to the intensity, persistence, and limiting effects of his symptoms. *Id*.

II.

The Act provides for limited judicial review of final decisions of the Commissioner. I will affirm the decision if it is supported by substantial evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). I will reverse the Commissioner's findings only if they are not supported by substantial evidence or if an erroneous legal standard was applied. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). When an ALJ denies benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski*, 245 F.3d at 887. In determining whether the findings are supported by substantial evidence, I review the entire administrative record, but I do not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [my] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. If the Commissioner's decision lacks evidentiary support or such adequate discussion of the issues to afford meaningful appellate

review, it cannot stand. *Steele v. Barnhart,* 290 F. 3d 936, 940 (7th Cir. 2002).

Social security regulations require that a claimant suffer from a disability within the meaning of the Act in order to receive benefits. To determine whether a claimant is disabled, a sequential five-step evaluation must be performed pursuant to 20 C.F.R. § 404.1520. The ALJ must evaluate, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether she has a severe impairment; (3) whether the claimant's impairment meets or equals one listed [in 20 C.F.R. § 404, Subpt. P, App. 1]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford*, 227 F.3d. at 868 (citation omitted). The burden of proof shifts to the Commissioner at step five. *Id.*

Plaintiff argues that the ALJ's decision must be reversed or remanded, asserting that the ALJ: (1) made factual errors regarding plaintiff's use of a compression pump, and the need to elevate his leg when sitting and take breaks every thirty minutes; (2) improperly rejected the opinions of plaintiff's treating source regarding RFC; (3) improperly evaluated the plaintiff's credibility; (4) improperly assessed plaintiff's RFC; and (5) failed to properly question the VE and did not consider VE testimony favorable to plaintiff. The Commissioner counters that the ALJ's decision was reasonable, substantial evidence supports the ALJ's credibility assessment and rejection of treating source

7

opinion, and that the VE testimony plaintiff refers to was irrelevant due to the ALJ's finding on RFC.

Plaintiff testified that he spends most of his time sitting or lying down with his leg elevated, and that when he does not elevate his leg, it swells and causes pain. (R. 552.) To ease the pain and swelling in his leg, plaintiff testified that he takes medication, wears a compression stocking, and periodically uses a pneumatic compression pump. (R. 501-503, 515, 540-41, 553.) In addition to notes on his medical records documenting plaintiff's symptoms and treatment, plaintiff's treating source of several years, Mr. Verna, a physician's assistant, submitted a written opinion dated March 3, 2006. (R. 369.) The opinion states that it is "medically necessary" for plaintiff to elevate his leg while sitting, among other things. *Id*. With respect to the compression pump, the record documents objectively that such a pump was prescribed and that plaintiff reported regular use of that pump. (R. 362, 364, 365, 368, 515, 540, 553.) Plaintiff also testified at the hearing that he uses his compression pump three or four hours per day. (R. 540, 553.)

The ALJ noted in his decision that the plaintiff "does have pain in his left leg and hip and obviously would not be able to stand or walk for long periods of time." (R. 20.) However, the ALJ found plaintiff's testimony not "fully" credible with respect to his described functional limitations, and rejected Mr. Verna's

8

opinion on functional capacity "for the reasons discussed above," with no further elaboration. (R. 21.)

Mr. Verna's March 2006 opinion states in relevant part:

> Mr. Eggerson has been under my direct medical care and supervision for several years.
>
> In my opinion, Mr. Eggerson is unable to sustain a "full time" job. This is based on the symptoms he experiences and his functional capacity.
>
> Mr. Eggerson's immunodeficiency causes daytime fatigue which requires him to rest several times throughout the day. He also suffers from lower extremity lymphedema. This condition prevents him from standing. It also is medically necessary that he keep his leg elevated above hip level when sitting. Not doing so causes swelling of the extremity and a great deal of pain. The aforementioned issues have also affected his ADL's, concentration, pace and social functioning.
>
> If you have any questions, please contact me...

(R. 369.) This opinion gives insight into the impact of plaintiff's disability on his ability to function, yet the ALJ rejected it with no clear explanation. Without a specific reason for rejecting Mr. Verna's opinion on functional capacity I cannot determine if the ALJ's rejection was appropriate. *Steele*, 290 F.3d at 940; *Zurawski*, 245 F.3d at 887.

Opinions from medical sources on issues reserved for the Commissioner must not be ignored. *See Clifford,* 227 F.3d 870-71; SSR 96-5p. Rather, the adjudicator must look at the evidence in

9

the case record and determine the extent to which the opinion is supported by the record before deciding what weight the opinion should be given, if any. *Id*. The ALJ may even contact the treating source for clarification on his opinion. SSR 96-5p ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion"). Regardless, the decision must explain the consideration given to the treating source's opinion. *Steele*, 290 F.3d at 940; *Zurawski*, 245 F.3d at 887. I am not suggesting Mr. Verna's opinion should be given controlling weight, but his opinion should have been considered and weighed along with the other evidence in the record.

Moreover, other than the ALJ's flat rejection of Mr. Verna's opinion, the only mention of Mr. Verna in the decision comes earlier in reference to a mental disability determination, which is not at issue here. (R. 20-21.) In that section of the decision, the ALJ accurately states "Mr. Varna [*sic*] is not a medical doctor upon whom an opinion regarding disability can be based." (R. 20.) While physician's assistants are not "acceptable medical sources" for medical opinions regarding the existence of a determinable

medical impairment, they are valuable "other sources" for information regarding severity of an individual's impairment, treatment, and how such impairment can affect an individual's ability to function.  SSR 06-03p.  To the extent Mr. Verna's opinion was dismissed solely based on the fact that he is a physician's assistant, the rejection was improper.

With respect to the compression pump, the ALJ does not mention it in his decision at all.  While the record does not include a written medical opinion or written direction from a treating source describing for how long, or how often the pump is needed, it does show that plaintiff was prescribed a pump and that he regularly reported using it.  (R. 362, 364, 365, 368, 540, 553.)  Plaintiff also testified as to the times and periods of time he used the pump every day and even brought it with him to the hearing to show the ALJ.  (R. 540, 553.)  This line of evidence should have been considered and discussed in the ALJ decision. *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir.2000)(failure to consider a relevant line of evidence requires remand).  This is especially true here, where there is a plethora of evidence concerning use of the compression pump and the VE testified that if plaintiff had to use a compression pump twice during the workday as described, he would not be employable.  (R. 572, 574.)

Additionally, plaintiff argues the RFC finding does not include reference to use of a cane and the Commissioner does not

11

address this issue in his brief. (R. 19-21.) In the decision, the ALJ appears to accept plaintiff's testimony that he can only walk 15-20 feet without a cane, but then finds plaintiff has the ability to walk a block and a half, without mention of a cane, in the RFC finding. This inconsistency should be addressed on remand.

Regarding plaintiff's credibility, I cannot disturb the ALJ's determination unless it is patently wrong. *See Zurawski*, 245 F.3d at 887. "Under Social Security Ruling 96-7p, the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* While the decision in this case cites the appropriate factors for credibility consideration and summarizes plaintiff's testimony, I cannot discern whether the credibility determination is correct because the only specific examples given are either taken out of context or are neutral facts, presented with little reasoning as to why they support the ALJ's determination.

First, the ALJ found plaintiff's testimony that he could "sit all day" was "not consistent with the level of discomfort which would require elevating his leg." (R. 21.) However, in this

12

instance, plaintiff's testimony was taken out of context. In relevant part, plaintiff testified as follows:

> Q   Okay. How long can you sit?
>
> A   I can basically all day just sitting.
>
> Q   Okay.
>
> A   But as far as --
>
> Q   Listen to the question. And if you don't understand the question, let me know.
>
> A   Okay
>
> Q   How long can you stand?...

(R. 534.) Here, it appears plaintiff attempted to qualify his response but was interrupted by the ALJ, who then moved on to a different question. Later in the hearing, when asked a similar question about how much of the day plaintiff sits, he testified that he spent 65 to 70 percent of the day sitting or laying down, while elevating his leg or using a compression pump. (R. 552, 554-56.) Contrary to the ALJ's contention, plaintiff's answers are not inconsistent with each other or with Mr. Verna's opinion that plaintiff must elevate his leg when sitting. I do not attribute weight to plaintiff's statements, or suggest the testimony is clear; rather, I find this evidence shows that the ALJ's reasoning is flawed and not sufficiently supported by the evidence cited.

13

Regarding pain level, the ALJ cites as support for his credibility determination the fact that plaintiff's pain level was at a three on a scale of 1 to 10 during the hearing and that plaintiff does not take strong pain medications. (R. 21). During the hearing, plaintiff also testified that he is in constant pain, that his pain level fluctuates between 3 and 8 on a scale of 10, and that he takes a variety of pain medication, elevates his leg or uses his compression pump to relieve the pain and swelling. (R. 369, 501-03, 515, 540-41, 548-49, 553.) Without further explanation from the ALJ, plaintiff's pain level of "three" during the hearing and the fact that he uses pain medication are neutral on credibility.

Plaintiff contends that the ALJ also failed to credit his testimony regarding fatigue and side effects of medication. (Pl.'s Mem. 2). The Commissioner does not address this issue in his brief, but rather generally avers that plaintiff's credibility was properly evaluated using the factors prescribed by SSR 96-7. (Def. 's Mem. 6). The record shows plaintiff takes a number of medications that can cause fatigue, that he repeatedly complained of fatigue, and that he testified to such fatigue at the hearing. The only evidence vaguely referenced by the ALJ in support of his credibility finding was a daily living questionnaire[5], which was

---

[5] The decision states that the questionnaire is dated January 30, 2006, but the only such questionnaire I found in the record is dated January 30, 2005 (R. 201-08).

14

more than a year old at the time of the hearings and not inconsistent with plaintiff's testimony, Mr. Verna's opinion, or plaintiff's medical records. (R. 20-21.) The ALJ's reasoning for relying on the 2005 questionnaire over all the other testimony and record data is not sufficiently explained and the Commissioner does not provide any substantive argument that it was. Any question in the ALJ's mind concerning the credibility of plaintiff's functional capacity contentions, or standard of care for HIV and lymphedema could easily have been fleshed out with a phone call to Mr. Verna or discussed with the ME at the hearing. The ALJ's failure to address the relevant evidence in his decision precludes an informed review and requires that the case be remanded for further findings.[6]

### III.

On remand, the ALJ must consider the full range of medical evidence, with due regard for Mr. Verna's opinions, and the impact of plaintiff's HIV status and medications with respect to pain and

---

[6] The ALJ's failure to acknowledge the hypothetical posed to the VE by plaintiff's attorney based on plaintiff's alleged functional capacity limitations is consistent with the ALJ's rejection of Mr. Verna's written opinion and his credibility determination, and therefore not improper in and of itself. However, as explained in this opinion, the ALJ's rejection of Mr. Verna's opinion and his credibility determination regarding plaintiff's functional capacity limitations were improper. Reconsideration of RFC, and plaintiff's credibility, will necessitate reconsideration of the jobs available in the national economy.

fatigue on his RFC. Mr. Eggerson's case is remanded for further proceedings consistent with this opinion.

                                              **ENTER ORDER:**

                                     *[signature: Elaine E. Bucklo]*

                                      **Elaine E. Bucklo**
                                      United States District Judge

Dated: October 2, 2008